UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | No.  07-100 -P-H |
| ) | |
| SHAHEEN CURRY ) | |

MOTION TO SUPPRESS STATEMENTS AND PHYSICAL EVIDENCE
WITH INCORPORATED MEMORANDUM

**Summary:** Officers seized 3 different mobile telephones during the arrest of Shaheen and Durrell Curry, two Motorola models and one Verizon LG model. While in custody, Shaheen was questioned about ownership of these mobile phones either without benefit of *Miranda* warnings, or after invoking his right to remain silent.  The police then searched the seized phones without consent and without a warrant.

**Facts**[1]:

1. Shaheen Curry was arrested in front of the Scarborough Wal-Mart store on August 31, 2007 at about 7:40 p.m.  Arrested at the same time was co-defendant Durrell Curry.  The report of Scarborough Police Officer Joshua Guay, indicates, "When the subject with the white shirt [Shaheen Curry] was taken into custody, two cell phones fell out of his pocket and onto the ground.  I seized the cell phones for investigation purposes".  Office Guay adds later in the same report that after the "second suspect" [Durrell Curry] was arrested, a cell phone was taken during a search incident to the arrest.

---

[1] The following are compiled from the discovery provided by the government and the defense investigation to date.

1

2. The arrests in this case occurred after a confidential source (CS), working with the officers, set up a "sting" drug buy in which the CS is alleged to have made arrangements to purchase crack cocaine from what the CS described as two black males who the CS contacted at telephone number 207-321-1015. Once an alleged agreement was reached the CS was meeting the seller(s), who were to arrive by taxi at the Scarborough Wal-Mart. The officers were waiting with the CS and when Shaheen and Durrell Curry, (both black males) got out of the taxi and were identified by the CS, the officers intervened and arrested both Currys. The officers also seized the three cellular phones discussed in paragraph 1.

3. Durrell Curry gave a post-Miranda statement to agent MacVane. Durrell's statement does not mention a cell phone nor does the accompanying police report about this statement by Durrell mention a cell phone or attribute any statements about a cell phone to Durrell Curry.[2] Durrell's statement concludes, "The crack that the cops found was mine".

4. Agent Wolff "attempted to interview Shaheen Curry and Curry refused to give consent for the hotel room and refused to answer questions."

5. Officer Guay, after learning of Durrell's written statement and without consent or a warrant searched the seized mobile phones. "Upon checking each of the subject phones I learned that

---

[2] What appear to be the handwritten notes of an agent present at Durrell Curry's interview contain the isolated notation on the upper right hand portion of the page, "Black Nextel, 710- 617-315-2054" (underlining in original). The relevancy of this note is uncertain; there is no Nextel phone found nor is counsel aware of any significance that might attach to the referenced number.

one of the cell phones that Michael [Shaheen Curry] had in his possession was the 321-1015 number that all of the calls from the CS had been made to."

6. Special Agent Kevin Cashman prepared an Affidavit, in support of an application for a the search warrant sought for hotel room #219 at the Travelodge in Portland. Agent Cashman interviewed the taxi driver at Wal-Mart who told Cashman he picked up the Currys at the Portland Travelodge. Cashmen went to the Travelodge and spoke with the clerk, and reviewed the guest list, learning that Shaheen Curry was the registered guest for room 219 at the Travelodge.. The critical fact in the affidavit, establishing probable cause for the warrant, is in paragraph III (C) of the affidavit, upon arrest, "Both subjects [Shaheen and Durrell Curry]  had approximately $40.00 on their person and Shaheen Curry was in possession of the telephone the CI [CS] had called (321-1015)".

7. A warrant issued and the search of room 219 yielded:
   - A positive trained canine reaction to several locations in the room.
   - A shaving kit containing a total of $1,337 dollars in cash, primarily in denominations of $20s and $50s.
   - A photo ID card and a phone receipt, both in the name of Shaheen Curry, located inside the same shaving kit as the currency.
   - A digital scale on a night stand which tested positive for cocaine and an open box of baggies nearby.

- Three "corner cut" baggies in a trash can.[3]

**Arguments:**

1. The officers custodial interrogation of Shaheen Curry regarding possession or ownership of a mobile phone occurred either without Miranda warning, or after Shaheen has invoked his right to remain silent.

2. The officers searched the seized phones to obtain the phone's number without a warrant and without consent.

3. The officers used the illegally obtained phone number as critical information used to obtain a search warrant for Shaheen Curry's hotel room.

4. The officers commingled the two Motorola mobile telephones seized at the time of arrest. The government cannot ascertain which Motorola phone was located where, without use of the improperly obtained statement about phone ownership.


**Law and Argument:**

1. **The officers custodial interrogation of Shaheen Curry regarding possession or ownership of a mobile phone occurred either without Miranda warning, or after Shaheen invoked his right to remain silent.**

The discovery received to date is not clear when or if Miranda warnings were given to Shaheen Curry. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Miranda warnings clearly were given to Durrell. Shaheen was arrested almost immediately after stepping out of the taxi at the Wal-Mart. All questioning occurred while he was in custody. Questions that are reasonably likely to

---

[3] The alleged crack seized at the Wal-Mart arrest was "packaged" or contained in "what appeared to be the corner of a plastic baggie".

elicit an incriminating response constitute the "functional equivalent" of express questioning. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).  One of the major goals of the agents was to link the telephone number called by the CS, 207-321-1015, with the two men they had just arrested.  What better way, than to find out who the seized mobile phones belong to, and what the number is of each seized phone.  **Asking Shaheen if a phone is his, or which of the multiple phones belonged to him, is a question designed to illicit an incriminating response at a time when Shaheen was in custody.**  *Miranda* warnings are needed.  They were either not given; there is no documentation in the discovery of Shaheen receiving *Miranda* warnings, or, if given, Shaheen had already declined to answer and was questioned anyway. See fact paragraph 4.

**2.     The officers searched the seized phones to obtain the phone's number without a warrant and without consent.**

Officer Guay searched the seized phones and determined that one of them which he attributed to Shaheen Curry, was telephone number 207-321-1015.  See fact paragraph 5.  This search was without a warrant and without Shaheen's consent.

**a.     Standing.**  For purposes of this motion Shaheen asserts an ownership interest in two cell phones, one a Motorola, and one a Version LG.  The police tell us these phones are Shaheen's.  The discovery does not tell us exactly which phone or if all of the phones were searched.  Nor does the discovery tell us of the 3 phones seized, which model was found to correspond with phone number 207-321-1015.  The evidence logs show three phones and assign 2, one Motorola and 1 Verizon LG to Shaheen.  The second Motorola phone is Durrell's and Shaheen agrees he has no standing as to a search of Durrell's phone.  An evidentiary hearing is needed to clarify the relationship of the three

phones to the two individuals and to correlate the phone number with the handset.

      b.     **Reasonable Expectation of Privacy.**  For Fourth Amendment purposes, "a privacy expectation must meet both subjective and objective criteria: the complainant must have an actual expectation of privacy, and that expectation must be one which society recognizes as reasonable." *Vega-Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir. 1997)(allowing video surveillance of many workplace functions by employer).  The question of whether a party has a reasonable expectation of privacy is context-specific, and "each case therefore must be judged according to its own scenario." *Id.* 178.  Cell phones are part of an ongoing change in the way we live.  They are not merely a two way communication device.  Today's cell phones also serve as "personal information managers" and often contain address books, photographs, contact managers, to do list holder, date books, and e-mail.  They are similar to computer files.  *U.S. v. Arnold*, 454 F. Supp. 2d 999, 1003-4 (C.D. CA, 2006)(noting extensive private information in personal computers and suppressing in context of a border search).  An average reasonable person does not feel that the contents of their personal cellular phone are "public", nor is there any reason that society would feel that way.  Cell phone contents are accessible only to the person who has and opens the cell phone, the same as a persons private appointment calender, *U.S. v. Mancini*, 8 F.3d 104, 108 (1st Cir. 1993).

      c.     **Search Incident to Arrest.**  The discovery does not lay out a clear time line as to when officer Guay searched the seized phones or if they were all searched at the same time or over a measurable period of time.  The arrest occurred at around 7:40 p.m.  The affidavit in support of the warrant to search the Travelodge was signed at 10:57 p.m., and contained a reference to the cell phone and number.  Sometime within that 3 hour period the phone was searched.  In *U.S. v. Park*, 2007 WL 1521573 (N.D.Cal., May 23, 2007) the court confronted a similar situation and found that

the search was not incident to arrest. The Court distinguished those searches that occur in the field as part of the arrest, from later searching through a defendant's cell phone back at the police station after the arrest. *Id.* In *U.S. v. Lasalle*, 2007 WL 1390820, D. Hawaii, 2007), the court again suppressed a cell phone search as not incident to the arrest. *Lasalle* distinguishes possessions from clothing and the person. *Id.* *6. A non-contemporaneous to arrest search of a cell phone does not fall into the "search incident to arrest" exception. *cf U.S. v. Finley*, 477 F.3d 250 (5th Cir. 2007)(finding privacy right in cell phone contents but affirming search incident to arrest doctrine allowing cell phone search). Reason suggests that when there is no issue of officer safety, flight, destruction of evidence or exigency, the exception to the warrant requirement should not apply. Just as the officers applied for and obtained a warrant to search the Travelodge room, they could just as easily have sought a warrant to search the cell phone secure in police custody. They failed to do so and the result should be suppressed.

The fact specific nature of the issue at hand requires an evidentiary hearing following which the court will be able to apply the facts to the law.

**3.    The officers used the illegally obtained phone number as critical information used to obtain a search warrant for Shaheen Curry's hotel room.**

Resolution of this issue may be contingent on the court's finding regarding the validity of the cell phone search. "A warrant application must demonstrate probable cause to believe that (1) a crime has been committed – the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched – the so-called 'nexus' element." *United States v. Ribeiro*, 397 F.3d 43, 48 (1st Cir. 2005) (citation and internal quotation marks omitted). "In determining

whether the nexus element is satisfied, a magistrate has to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 48-49 (citation and internal punctuation omitted).  Both the issuing magistrate and a subsequent reviewing court look to "the totality of the circumstances indicated [within the four corners of] a supporting affidavit" to assess the existence *vel non* of probable cause." *United States v. Schaefer*, 87 F.3d 562, 565 (1st Cir. 1996) (citation and internal quotation marks omitted). "A reviewing court must give great deference to a magistrate's assessment of the facts and inferences supporting the affidavit . . ., reversing only if there is no substantial basis for concluding that probable cause existed." *United States v. Sawyer*, 144 F.3d 191, 193 (1st Cir. 1998) (citation and internal punctuation omitted).

Here, it is the cell phone number which if it comes from Shaheen's phone, ties Shaheen to the CS, despite Durrell's statement to the police that the crack was Durrell's alone.  The room is registered to Shaheen.  Although the taxi picked up both Currys at the Travelodge, the clerk did not say two males were in the room.  There was no evidence trying Durrell to the Travelodge room and the crack was found on Durrell.  Durrell not only confessed, but claimed he was the only one responsible.  Shaheen had no contraband.  Probable cause is gone after excising from the warrant affidavit possession by Shaheen of the cell phone with the phone number called by the CS.


4.      **The officers commingled the two Motorola mobile telephones seized at the time of arrest.  The discovery does not ascertain  which Motorola phone was located where.  The officers only establish ownership through use of the improperly obtained statement about phone ownership.**

8

The discovery provides no information allowing for distinction between the two Motorola phones recovered. The discovery attributes one Motorola to Durrell and one Motorola to Shaheen. The reports fail to show either phone was marked and continuity of chain of custody maintained from the arrest location at the Wal-Mart, to the search of the phones by officer Guay, to the inventory log and however the phones are currently stored.[4] We do not know if the phone number at issue here, 207-321-1015, attached to Motorola phone "A" or "B". We can't tell if Motorola phone A was taken from Shaheen or B taken from Shaheen. The number, 207-321-1015, could attach to the phone taken from Durrell, but now attributed to Shaheen due to improper evidence marking and procedure. While chain of custody is sometimes addressed as an in-limine or trial issue, here it goes directly to the facts the Court needs to find to resolve the issues set forth above.

**Conclusion:**

The issues presented establish the need for a testimonial hearing following which the defendant asks the court to grant this motion, finding any questioning of Shaheen Curry about phone ownership to be in violation of his 5th and 6th Amendment rights, the warrantless search of the cell phone to violate the 4th Amendment, and the search of the hotel room to violate the 4th Amendment as the warrant affidavit was based on the critical yet illegally obtained link of the 207-321-1015 number to the Motorola phone attributed to Shaheen. Exclusion of the physical phones is sought due to the commingling of two Motorola phones, one allegedly possessed by Shaheen and the other by Durrell, and the improper questioning of Shaheen regarding ownership of the phone.

---

[4] The defense claim focuses only on the handling of the phones **before** they are received by Scarborough Evidence Officer Ron Nelson.

DATE: November 19, 2007                                    /s/David Beneman

                                                           David Beneman
                                                           Attorney for Shaheen Curry

David Beneman
Federal Defender
P.O. Box 595
Portland, Me 0412-0595
207-553-7070 ext. 101
FAX: 553-7017
David_Beneman@fd.org

## CERTIFICATE OF SERVICE

I, **David Beneman**, attorney for **Shaheen Curry**, hereby certify that I have served, electronically, a copy of the within " MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS WITH INCORPORATED MEMORANDUM" upon **Michael Conley**, Assistant United States Attorney, via the ECF system.

                                                           /s/ David Beneman
                                                           David Beneman

DATE: